UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FANTASTIC SAMS FRANCHISE CORPORATION, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-2318 |
| | § | |
| GERALD MOSLEY, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is plaintiff Fantastic Sams Franchise Corporation's ("Fantastic Sams") motion for a preliminary injunction to require defendant Gerald Mosley to comply with the Fantastic Sams Salons Corporation License Agreement ("Agreement") (Dkt. 2, Ex. A) and cease any trademark infringement. Dkt. 2. A hearing was held on November 29, 2016. Dkt. 18. Also pending before the court is Mosley's motion to dismiss. Dkt. 16. Based on the Agreement, the motion, the evidence presented at the injunction hearing, response, and the applicable law, the court is of the opinion that a preliminary injunction should be GRANTED IN PART consistent with the parameters outlined in the following opinion. Mosley's motion to dismiss is DENIED.

**I. BACKGROUND**

This case is about whether Gerald Mosley, by opening up the hair salon Shear Perfection of Cypress, is violating his contractual obligations as a former franchisee of Fantastic Sams' hair salons and is infringing on Fantastic Sams' trademarks and trade dress. Dkt. 1-2.

On April 18, 2005, Gerald Mosley entered into a ten-year franchise agreement with Fantastic Sams by contracting with Salons Corp. (the parent company to Fantastic Sams). Dkt. 2, Ex. A at 12. The Agreement governs the obligation of both parties in the franchise from inception through termination. *Id*. Fantastic Sams provides its franchisees a system of hair care products and services, including registered trademarks, hair products, educational and training programs, advertising and marketing, operating procedures, and an established business model. *Id*. at 5; Dkt. 2, Wells Dec. at 3. Fantastic Sams claims it has expended "millions of dollars" to develop the goodwill associated with its trade names and trade marks and the value of the goodwill "exceeds hundreds of millions of dollars." Dkt. 2 at 15. In May 2005, Mosley, under the Agreement, opened a Fantastic Sams salon at 14315 Cypress Rose Hill, Suite 120, Cypress, TX 77429. Dkt. 1 at 7; Dkt. 16 at 6. While operating the salon, Mosley paid licensing fees and benefitted from the Fantastic Sams system. *Id.* at 16.

Mosley did not exercise his opportunity to renew the franchise, and the Agreement expired on April 17, 2016. Dkt. 1 at 7; Dkt. 16 at 7. Mosley opened a new salon, named Shear Perfection of Cypress, at 14710 Mueschke Rd., Suite 500, Cypress, TX 77429. Dkt. 2, Wells Dec. at 6–7.

Mosley asserted in his testimony at the hearing that he received little guidance about his termination obligations, though those obligations were specified in the Agreement. Lisa Counts, Fantastic Sams's Regional Director of the South/West, claims that Mosley conveyed that he leaving the salon business completely. Dkt. 2, Counts Dec. at 1–2. Accordingly Fantastic Sams had no reason to believe he was opening a new salon, the primary concern was

"de-identification" of the former Fantastic Sams location. Dkt. 1 at 10-11; Dkt. 2, Dkt. 2, Counts Dec. at 1–2; Dkt. 19, Ex. 4. After Mosley's contract expired, a Fantastic Sams Franchise Business Consultant visited the location of Mosley's former Fantastic Sams location, and found a sign on the door stating "We're Moving!" along with the new address for the Shear Perfection of Cypress salon. Dkt. 2, Rolando Dec. at 2; Dkt. 1 at 9-10. The sign also indicated the salon would continue to use the same phone number (281-758-0200). *Id.*

Mosley, for his part, claims that he did not receive any notification of Fantastic Sams' issues with his activities after the expiration of the franchise agreement until the filing of the live complaint. Dkt. 11. Mosley testified about the steps he was taking comply with his post-termination obligations, while defending his continued operations of the Shear Pleasure of Cypress salon at its current location. Dkt. 11.

The Agreement contains a Mediation and Arbitration provision for dispute resolution. Dkt. 2, Ex. A. at 31. However, Fantastic Sams reserved the right to seek temporary injunctive relief from a court of competent jurisdiction. *Id*. Fantastic Sams filed a complaint against Mosley for preliminary injunctive relief, alleging breach of contract, unfair competition, and trademark and trade dress infringement and dilution under the Lanham Act and common law. Dkt. 1. Mosley answered the complaint. Dkt. 11. Mosley also moved to dismiss Fantastic Sams's claim and responded to Fantastic Sams's motion for a preliminary injunction. Dkt. 16. A hearing on the preliminary injunction was held on November 29, 2016.

## II. MOSLEY'S MOTION TO DISMISS AND RESPONSE

Mosley answered the complaint on September 12, 2016. Dkt. 11. On November 23, 2016, after answering the complaint, Mosley filed a motion to dismiss for failure to state a claim and a response to Fantastic Sams' motion for a preliminary injunction. Dkt. 16. A motion asserting the defense of failure to state a claim "must be made before pleading if a responsive pleading is allowed," but "no defense . . . is waived by joining it with one or more other defenses or objections in a responsive pleading or motion." Fed. R. Civ. P. 12(b). Mosley's answer did not preserve a defense of failure to state a claim. Dkt. 11. Because Mosley's motion to dismiss was not pled before or jointly with his first responsive pleading, it was untimely. Therefore, the court DENIES Mosley's motion to dismiss (Dkt. 16).

Mosley's response to Fantastic Sams' motion for a preliminary injunction was also untimely. Dkt. 16. Mosley was served with Fantastic Sams's motion for a preliminary injunction on August 20, 2016. Dkt. 8. Mosley responded on November 23, 2016. Dkt. 16. Even though the response was untimely, the court will consider Mosley's response.

## III. FANTASTIC SAMS' MOTION FOR PRELIMINARY INJUNCTION

**A.   Legal Standard**

The decision to grant or deny a preliminary injunction lies within the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "A court should issue a preliminary injunction if the movant shows '(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result

if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.'" *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006) (internal quotations omitted)). "A preliminary injunction is an 'extraordinary remedy' and should only be granted if the plaintiffs have 'clearly carried the burden of persuasion on all four requirements.'" *Planned Parenthood of Hous. and Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) (quoting *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003) (internal citations omitted)).

**B.   LICENSING AGREEMENT ANALYSIS**

Fantastic Sams seeks preliminary injunctive relief to enforce two provisions of the Agreement: (1) Mosley's post-termination obligations, and (2) the non-compete provision. For Fantastic Sams to establish the first element required for injunctive relief, "a substantial likelihood of success on the merits," these provisions must be deemed enforceable. Therefore the court will consider the enforceability of these provisions, and then address the remainder of the elements required to grant preliminary injunctive relief.

   *1. Post-Termination Obligations*

First, Fantastic Sams alleges that Mosley breached the post-termination provisions of the Agreement. Among his post-termination obligations, Mosley is required to cease using Fantastic Sams' marks and trade dress, to transfer the telephone numbers he used while operating the Fantastic Sams salon, and to not conduct business that gives the public the impression that the Agreement is in force. Dkt. 2, Ex. A at 17–19; Dkt. 2, Wells Dec. at 5. Mosley did not challenge the validity of any of these obligations in his arguments at the hearing or his response. Dkt. 16 at 12.

*2. Enforceability of the Non-Compete Agreement*

Second, Fantastic Sams seeks to enforce the non-compete provisions of the Agreement. Specifically, the relevant provision requires Mosley:

> To refrain, for a period of two (2) years from the effective date of expiration or termination of this Agreement, from directly or indirectly participating as an owner, partner, member, director, officer, employee, consultant, lender or agent, or serve in any other capacity in any business engaged in the sale or rental of products or services the same or similar to those of the Fantastic Sams System, within a five (5) mile radius of the Fantastic Sams Salon operated pursuant to this agreement.

Dkt. 2, Ex. A at 29.

Mosley argues that the non-compete provision should be rendered unenforceable. Dkt. 16 at 13. Under Texas law: "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable Agreement at the time the Agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code Ann. § 15.50. If the covenant not to compete is not in compliance with the Act, "the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary . . . ." *Id.*; *see also Ray Mart Inc. v. Stock Bldg. Supply of Tex. LP*, 302 F. App'x 232, 236 (5th Cir. 2008) (defining "otherwise enforceable" and "ancillary" agreements). "Texas law presumes a party has read and knows the terms of a contract that he has signed." *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 566 (S.D. Tex. 2014), *appeal dismissed* (Sept. 11, 2014) (citing *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007)).

a. *Ancillary or Part of an Otherwise Enforceable Agreement*

The court concludes that the Agreement is an "otherwise enforceable agreement." Both parties made a number of promises to each other under the Agreement that were enforceable. *See Ray Mart Inc.*, 302 F. App'x at 236 (holding an employment agreement was "otherwise enforceable" because the parties made "multiple enforceable promises" to each other). Amongst other contractual obligations, Mosley paid franchising fees under the Agreement, and Fantastic Sams provided Mosley with training, products, and other services over the course of his ten years operating a Fantastic Sams salon. Dkts. 1, 2, 16. The non-compete provision is merely one part of the Agreement that covers this business relationship.

Mosley objects that there was no consideration given for the non-compete agreement, making the provision unenforceable. Dkt. 16 at 15. For a non-compete provision to be considered "ancillary" to an "otherwise enforceable agreement," there are two elements to the inquiry: (1) consideration given to the otherwise enforceable agreement must give rise to the party's interest in restraining competition, and (2) the covenant must be designed to enforce the returned consideration or promise. *Ray Mart*, 302 F. App'x at 237. Here, as consideration, Mosley received Fantastic Sams's proprietary and confidential information in the form of training, business models, and operations manuals. Dkt. 2, Ex. A at 18, 21–23. Mosley also received an exclusivity commitment from Fantastic Sams to not license competing operations near his salons. *Id.* at 13. The benefits directly gave rise to Fantastic Sams interest in restraining Mosley from competition and were given to Mosley in exchange for his promise not to compete. *Id.* The Agreement also contains provisions designed to enforce Mosley's promise not to compete as return consideration. Dkt. 2, Ex. A at 29. After this exchange of consideration, the court finds the non-compete a valid ancillary provision.

Because the court finds the broader Agreement is an "otherwise enforceable agreement," and the non-compete provision is "ancillary" to that contract as required by Texas code, the court must next consider if the time, geographic area, and scope of activity limitations on competitions are reasonable.

*b. Reasonable Time, Geographic Area, and Scope of Activity Limitations*.

First, as to geographic scope, the non-compete provision prohibits Mosley from operating a competing business within a five mile radius of his former Fantastic Sams salon location. Mosley challenged the reasonableness of the geographic scope by arguing that it was inequitable because Fantastic Sams reserved the right to license another franchise location within 0.5 miles under the Agreement. However, the Agreement does not need to be fully equitable to be reasonable and a five mile radius is a fairly small geographic area, so the court finds the geographic scope limitations reasonable.

Second, the scope of activity to be restrained is limited to a hair salon business. Mosley did not challenge this provision and the court heard no evidence upon which to question the reasonableness of the limitation on the scope of the activity. Third, with regard to timing, Mosley would be enjoined from the above activities for an two year period. Mosley did not challenge this provision either.

The inquiry for the court is whether these limitations are "reasonable and [does] not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code Ann. § 15.50 (West). The court finds a two-year period and a five-mile radius limitation in operating a competing hair salon is a reasonable restraint to protect Fantastic Sams' goodwill and business interests. These restraints do not impose a broad or unnecessary restraint on Mosley.

*3. Injunctive Relief*

Because the court has found the Agreement, including the non-compete provision, enforceable, the court turns to whether Fantastic Sams has met the four elements required for a preliminary injunction *Paulsson Geophysical Servs.*, 529 F.3d at 309.

First, the breach of contract action is likely to succeed on its merits. Fantastic Sams alleges that Mosley is violating his post-termination obligations because he is continuing to use the telephone number he used while a Fantastic Sams franchisee, there is a yellow pages online listing at yp.com that identifies his new location as a Fantastic Sams location, his Cosmetology Salon License is still registered under the name "Fantastic Sams'-Cypress Rosehill," and the merchant authorization receipt received by customers of Shear Pleasure of Cypress on their bank statements reflects Fantastic Sams as a merchant. Dkt. 2 at 20–21; Dkt. 2, Nichols Dec., Exs. 1–5. Mosley, while conceding his post-termination obligations are enforceable, challenges Fantastic Sams's allegations that he is violating them. Dkt. 16. Mosley testified about his efforts to transfer the telephone number, his efforts to correct the merchant information on the credit card receipts, and his inability to alter information on third-party web site listings. The court concludes that it is substantially likely that Mosley will be found, to some extent, to have breached these post-termination obligations, despite his efforts to remedy these defects. Therefore, granting an injunction is appropriate to the extent necessary to compel Mosley to completely comply with his post-termination obligations.

With respect to the non-compete provision, Fantastic Sams has established through testimony at the hearing that Shear Pleasure of Cypress, a salon business, is approximately two miles from the location of Mosley's former Fantastic Sams location. The court directly asked Mosley's counsel if he had any evidence that showed the Shear Pleasure location was outside the five mile radius required

by the non-compete provision, and Mosley's counsel conceded that there was no contradictory evidence. The court concludes it is substantially likely that Mosley will be found in violation of this provision of his non-compete covenant prohibiting operation of another hair salon within a five mile radius of the former Fantastic Sams location in the two-year period following contract termination.

Second, Mosley's violation of the post-termination and non-compete provisions of the agreement are likely to cause irreparable harm to Fantastic Sams. "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown. However, the injury need not have been inflicted when application is made or be certain to occur; a strong threat of irreparable injury before trial is an adequate basis." *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001). Fantastic Sams argues that the sign posted on Mosley's former salon directing customers to the new salon, Mosley's use of the same phone number, and other actions are a clear indication that Mosley is luring Fantastic Sams' customers to his new business. Dkt. 2 at 28–29. Mosley testified that most hair salon customers are likely to follow their stylist, rather than a specific brand, and his stylists joined him in his move to a new business. Dkt. 16 at 10. Fantastic Sams, more compellingly, argued the existence of Mosley's nearby salon, which offers nearly identical hair care services to Fantastic Sams, prevents Fantastic Sams from licensing a new franchise in the area. Dkt. 2 at 28–29. The court also notes that the Agreement actually contains a provision that requires Mosley to concede that violations of the Agreement constitute irreparable harm to Fantastic Sams. *Id.* The court agrees with Fantastic Sams that Mosley's continued operations of a nearby salon, in violation of the Agreement, hurts other franchisees, poses a risk of loss of goodwill, and inhibits the opening of new Fantastic Sams franchises in the area. All of these injuries cause irreparable harm to Fantastic Sams as a whole, and that harm cannot be fully remedied with damages.

The balancing of hardships favors granting Fantastic Sams an injunction. The court acknowledges that it is a business hardship for Mosley to relocate Shear Pleasure of Cypress to a new location outside of the five mile radius required by the non-compete provision. But the court also notes that from Mosley's answer, response, and testimony at the hearing, he appears willing and easily able to comply with the remainder of the post-termination and non-compete provisions, such as transferring the phone number, correcting the merchant information with the credit card, and removing any remaining identification associated with Fantastic Sams. Dkts. 11, 16. Finally, these hardships are self-induced, Mosley chose to open up a new salon in violation of the non-compete provision of the Agreement. Without an injunction, Fantastic Sams as a whole is being harmed, as they continue to experience the loss of goodwill, loss of customers, and loss of new franchise business opportunities. Therefore, the balance of hardships favors granting the injunction for Fantastic Sams.

Finally, the public will not be disserved through enforcement of this Agreement. Valid non-compete agreements encourage sharing of competitive information to help increase efficiency and performance of a business venture. *Marsh USA Inc. v. Cook,* 354 S.W.3d 764, 769 (Tex. 2011). Such agreements also protect companies that invest "significant resources in developing good will that an employee could otherwise immediately take and use against them in business." *Id.* It is reasonable that to protect Fantastic Sams' confidential information and good will by restraining Mosley from immediately taking and using them in his own business. Therefore, the court concludes it is in the public interest to enforce this non-compete provision.

For the foregoing reasons, the court finds that principles of equity require injunctive relief for Fantastic Sams. Therefore, the court GRANTS the injunction required to enforce the post-termination and non-compete provisions of the Agreement.

### C.   TRADEMARK INFRINGEMENT ANALYSIS

Fantastic Sams also seeks a preliminary injunction based on allegations against Mosley for claims of trademark and trade dress infringement and dilution under the Lanham Act and common law. First, to grant a preliminary injunction, the court must conclude that Fantastic Sams has established that there is a substantial likelihood that it will succeed on the merits of its trademark claims.

*1. Legal Standard*

To prevail on a claim of trademark infringement under the Lanham Act, plaintiff must show: (1) it possesses a valid mark; and (2) defendant's use of its trademarks creates a likelihood of confusion as to source, affiliation, or sponsorship. *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998). However, it is important to remember that "mere reproduction of a trademark does not constitute trademark infringement if there is no likelihood of confusion." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:28 (4th ed. 2009). And, "likelihood of confusion" is not *possible* confusion, it is *probable* confusion. *Bd. of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). In this respect, "[c]ontext is especially critical," and a court is required to "consider the marks in the context that a customer perceives them in the marketplace." *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 485 (5th Cir. 2004).

Dilution occurs when an activity diminishes a mark's ability "to clearly and unmistakably distinguish the source of a product." *Scott Fetzer Co.*, 381 F.3d at 489 (citing 15 U.S.C. § 1127; *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 812 (Tex.App.—Austin 2001, pet. den.)). The elements of a dilution claim are: (1) plaintiffs' ownership

12

of a famous and distinctive mark; (2) use by the defendant of the mark; (3) association between the two marks due to similarity; and (4) the association between the two marks is likely to impair the distinctiveness of the mark or harm plaintiffs' reputation. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526 (5th Cir. 2012). Under Texas law, a plaintiff must show a distinctive mark and a likelihood of dilution. *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278–79 (5th Cir. 2002).

    *2. Analysis*

Fantastic Sams alleges Mosley infringed on its trademark and trade dress in two general categories: (1) Mosley's use of the Fantastic Sams name and branded products, and (2) Mosley's use of trade dress that is associated with the Fantastic Sams brand. Fantastic Sams also argues that Mosley's activities are likely to cause trademark dilution. The court looks at each of these claims in turn and concludes that Fantastic Sams has not met the burden of proving that there is a substantial likelihood these claims will succeed on their merits. Therefore, Fantastic Sams is not entitled to the "extraordinary remedy" of a preliminary injunction on trademark grounds.

    *a. The Fantastic Sams Name*

The parties do not dispute that the Fantastic Sams name and logos are valid marks on the register of the United States Patent and Trademark Office. Dkt. 2, Wells Dec. at 2. But Fantastic Sams must also establish the second element of trademark infringement: that Mosley's use of the mark creates a likelihood of confusion. *Bd. of Supervisors for LSU A&M Coll.*, 550 F.3d at 478. Fantastic Sams offered only limited evidence that Mosley was "using" the mark at all. Specifically, Fantastic Sams offered testimony and evidence at the hearing

13

regarding Mosley's use of a single bottle of Fantastic Sams shampoo at his new salon, the inclusion of the Fantastic Sams name in Mosley's salon Cosmetology License, and the appearance of the name Fantastic Sams on the credit card receipt merchant system, the latter of which Mosley presented evidence of his attempts to rectify. Dkt. 19, Ex. 1. Also, the court must consider this use in the context of a customer of the salon. A customer knows he is entering a business that has a completely different and separate name – Shear Perfection of Cypress. It is uncertain about whether these alleged uses of the Fantastic Sams marks are enough to create a likelihood of confusion. The court concludes that Fantastic Sams has not presented sufficient evidence that its claims of trademark infringement based on the use of Fantastic Sams marks alone are substantially likely to succeed on their merits.

  b. *Fantastic Sams Trade Dress*

Fantastic Sams argues that Mosley is also infringing on its trade dress. "Trade dress" is the "total image and overall appearance of a product" and "may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 250–51 (5th Cir. 2010). To prevail on a trade dress infringement claim under the Lanham Act, Fantastic Sams must prove three elements: (1) the trade dress is inherently distinctive or has acquired a secondary meaning; (2) its trade dress is primarily nonfunctional and therefore protectable; and (3) there is a likelihood that defendant's trade dress will lead to customer confusion. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998).

Fantastic Sams' briefing in support of its injunction does not specifically describe the elements of its trade dress, but states "has established a distinctive trade dress over the course of nearly forty

years of doing business." Dkt. 2 at 34. However, during testimony at the hearing, Fantastic Sams representatives noted that Mosley's use of black salon chairs from his Fantastic Sams salon, a now out-of-date coupon containing a picture of his stylists in his old Fantastic Sams salon with Fantastic Sams paint colors and wall hangings in the background (Mosley's new Shear Pleasure of Cypress Salon uses a different paint color scheme), and the layout of Mosley's salon are all features of Mosley's business that could identify it with Fantastic Sams' trade dress. Dkt. 19, Ex. 3 at 1–5; Several of these elements, such as the chairs and salon layout, seem to serve a primarily functional purpose, which would disqualify them as trade dress. Finally, Fantastic Sams provided no examples of customer confusion from Mosley's use of these elements. The court concludes that this evidence, alone is insufficient for Fantastic Sams to establish these items are elements of its inherently distinctive trade dress, let alone that Mosley's use of these elements will create customer confusion. Therefore, Fantastic Sams has not shown it has a substantial likelihood of succeeding on the merits of its trade dress infringement case.

  *c. Dilution*

Fantastic Sams suggests that the court consider that its trademarks and trade dress are diluted through the "circumstantial evidence" that Shear Pleasure of Cypress is operating under the "exact same mark, trade name, and trade dress in the promotion and operation of his competing business as he used when he was a licensed franchisee of Fantastic Sams." Dkt 2 at 37. Therefore, Fantastic Sams argues that dilution is "inevitable." *Id*. The court acknowledges that Mosley, either intentionally or carelessly, used some potentially identifiable trademark and trade dress elements from his former Fantastic Sams franchise. However, this hardly rises to the level of "exact same" considering Mosley has re-branded his salon with a new name, new paint scheme, and new salon products. Also, the court observes that the use of some of these elements, such as the black salon

15

chairs, are arguably not even protected trade dress. Finally, the court has no basis to draw a conclusion that customers of Shear Pleasure of Cypress will mistakenly believe the salon is associated with the Fantastic Sams franchise. Fantastic Sams does not offer any direct evidence of actual dilution through customer surveys and the like. Dkt. 2 at 37. Therefore, Fantastic Sams has not established that it will be substantially likely to succeed on the merits of a dilution cause of action.

Finally, the court notes the preliminary injunction to enforce the post-termination provisions of the Agreement will require that Mosley will correct some of the alleged sources of customer confusion, such as transferring of the phone number and complying with the de-identification provisions.

Because establishing a substantial likelihood of success on its merits is a required element for a preliminary injunction and Fantastic Sams failed to do so for its trademark and trade dress claims, the court DENIES Fantastic Sams' motion for preliminary injunction on trademark and trade dress infringement and dilution grounds.

**D.     Bond**

Finally, the court will address the matter of a bond. "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c)). The amount of security "is a matter for the discretion of the trial court." *Kaepa, Inc. v. Achilles Corp,* 76 F.3d 624, 628 (5th Cir. 1996) (internal quotations omitted). Fantastic Sams argues it should not be subject to a bond requirement because Mosley has no "realistic likelihood of harm" and because there is a strong likelihood it will succeed in its claims on its merits. Dkt. 2 at 41–42. The court ORDERS that this preliminary injunction will not be effective until Fantastic Sams posts a $1000.00 bond.

## V. Conclusions

The court DENIES Mosley's motion to dismiss. Dkt. 16.

The court GRANTS IN PART Fantastic Sams' motion for a preliminary injunction to the extent required to enforce the Agreement and ORDERS as follows:

1. For a period of two years from April 17, 2016, Defendant and all those who act in concert or participation with him are HEREBY ENJOINED from directly or indirectly participating as an owner, partner, member, director, officer, employee, consultant, lender, or agent, or serve in any other capacity in any business engaged in the sale or rental of products or services the same as or substantially similar to those of the Fantastic Sams System, within a five mile radius of his former Fantastic Sams salon, including, without limitation, the competing hair salon located at 14710 Mueschke Rd. Suite 500 Cypress, TX 77429;

2. Defendant and all those who act in concert or participation with him are HEREBY ENJOINED from conducting business in any manner that gives the general public the impression that the Agreement is still in force or that Defendant is in any way associated with Fantastic Sams;

3. Defendant and all those who act in concert or participation with him are hereby ORDERED to immediately turn over to Fantastic Sams the telephone number 281-758-0200 and to execute any paperwork necessary to effect the transfer of the telephone number to Fantastic Sams; and

4. It is further ORDERED that this Preliminary Injunction will not be effective unless and until Fantastic Sams executes and files with the court a bond in conformity with the law, or a cash deposit in lieu thereof, in the amount of $1000.00.

Signed at Houston, Texas on December 23, 2016.

_____
Gray H. Miller
United States District Judge